## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Case No. 06-10857 (BLS) |
| | ) | |
| PATRICIA HAMAN, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | **Related to Docket Nos. 14, 22,** |
| | ) | **29** |

### MEMORANDUM OPINION[1]

Before the Court is the Motion of the United States Trustee ("UST") to Dismiss the chapter 7 case of Patricia Haman (the "Debtor") pursuant to 11 U.S.C. § 707(b)(2) or, alternatively, pursuant to 11 U.S.C. § 707(b)(3) (the "Motion to Dismiss"). The Debtor opposes the Motion to Dismiss, conceding that the presumption of abuse has arisen pursuant to section 707(b)(2)(A) but asserting that the statutory presumption has been rebutted by her demonstration of a special circumstance justifying an additional expense under section 707(b)(2)(B), viz., a non-dischargeable student loan obligation.

For the reasons stated below, the Court concludes that the Debtor has rebutted the presumption of abuse by demonstrating a special circumstance that allows her to deduct the student loan payments. If requested by the UST, the Court will schedule a separate evidentiary hearing to consider whether the filing of the Debtor's case was abusive under section 707(b)(3).

---

[1] This Opinion constitutes the findings of facts and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

**BACKGROUND**

On August 15, 2006, the Debtor commenced the above-captioned case (the "Case"), seeking protection under chapter 7 of the Bankruptcy Code (the "Code"). Along with her voluntary petition, the Debtor filed her Schedules, Statement of Financial Affairs, and Statement of Current Monthly Income and Means Test Calculation ("Form B22A"). At that time, the Debtor's Form B22A indicated that she did not have sufficient net monthly income for the presumption of abuse to arise under section 707(b)(2). Included in her calculation of monthly deductions was a payment to Key Bank USA, National Association ("Key Bank"), which the Debtor categorized as a "payment on a priority claim." This monthly payment to Key Bank represents a student loan obligation incurred by the Debtor's son in October 2003 for which the Debtor is a co-signor. Following her son's development of psychological disorders, the Debtor has made fifteen monthly payments of $162.12 to Key Bank. As of October 13, 2006, the outstanding loan balance was $22,249.59.

On October 23, 2006, the UST filed its Motion to Dismiss arguing: (1) the presumption of abuse in fact did arise due to the Debtor's improper deduction of the student loan obligation as a "payment on a priority claim"; and (2) even if the Court found the deduction proper, dismissal of the Case under section 707(b)(3) was appropriate because the totality of the

circumstances indicated the Debtor's ability to fund a chapter 13 plan.

On November 9, 2006, the Debtor responded to the Motion to Dismiss.[2]  She conceded that the student loan obligation did not constitute a "payment on a priority claim" and that the presumption of abuse arose pursuant to section 707(b)(2)(A). Nonetheless, the Debtor argued that because the obligation was non-dischargeable, it constituted a special circumstance "for which there is no reasonable alternative."  11 U.S.C. § 707(b)(2)(B).  The Debtor contends this special circumstance would justify an additional expense to rebut the presumption of abuse.

An evidentiary hearing was held on February 1, 2007, at which time the Debtor testified and was cross-examined.  Although initially there was some dispute as to whether the Debtor's signature on the original loan agreement with Key Bank was a forgery, the Debtor testified at the hearing that she knew of and signed the agreement.  Hr'g Tr. 37:17-38:3, Feb. 1, 2007.

Also at the hearing, the UST was afforded the opportunity to respond to the Debtor's "special circumstance" argument. According to the UST, the Debtor's student loan obligation could never be a special circumstance rebutting the presumption because

---

[2]     In addition to her response to the Motion to Dismiss, the Debtor also amended her Form B22A on November 8, November 16, and December 20, 2006 to reflect her assertions.

it does not fall within the ambit of the examples of special circumstances provided in section 707(b)(2)(B) and because the debtor does have a "reasonable alternative" - to convert the Case to one under chapter 13, modify the rights of Key Bank pursuant to section 1322(b), and make a pro rata distribution to Key Bank for the length of a chapter 13 plan.[3]

This matter is ripe for decision.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1).  Consideration of this matter constitutes a "core proceeding" under 28 U.S.C. § 157(b)(2)(A) and (O).

## DISCUSSION

I.    A Brief Examination of the Mechanics of Section 707

Dismissal of a chapter 7 case is governed by section 707, which was substantially modified by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").[4] Pursuant to section 707(b)(1), the Court, after notice and a hearing, "may dismiss a case filed by an individual debtor under [chapter 7] whose debts are primarily consumer debts . . . if it

---

[3]    The Trustee also argued that the Debtor had a second alternative - to bring a non-dischargeability action against Key Bank pursuant to section 523(a)(8).  The Court will not address this argument given that the Debtor conceded that she could not satisfy the hardship discharge requirements.

[4]    Pub. L. No. 109-8, 119 Stat. 23 (2005).

4

finds that the granting of relief would be an abuse of the
provisions of [chapter 7]." To determine whether the granting of
relief would be an abuse, the Court is guided by the "means test"
of BAPCPA, established by section 707(b)(2)(A)(i). According to
section 707(b)(2)(A)(i), "the court shall presume abuse exists if
the debtor's current monthly income reduced by the amounts
determined under clauses (ii), (iii), and (iv), and multiplied by
60 is not less than the lesser of . . . 25 percent of the
debtor's nonpriority unsecured claims in the case, or $6,000,
whichever is greater; or . . . $10,000."

For purposes of this test, a debtor's current monthly income
("CMI"), as defined under section 101(10A), is:

> the average monthly income from all sources
> that the debtor receives (or in a joint case
> the debtor and the debtor's spouse receive)
> without regard to whether such income is
> taxable income, derived during the 6-month
> period ending on . . . the last day of the
> calendar month immediately preceding the date
> of the commencement of the case if the debtor
> files the schedule of current income required
> by section 521(a)(1)(B)(ii) . . . or . . .
> the date on which current income is
> determined by the court for purposes of
> [chapter 7] if the debtor does not file the
> schedule of current income required by
> section 521(a)(1)(B)(ii) . . . .

11 U.S.C. § 101(10A).

From this amount, certain expenses must be subtracted.
Pursuant to section 707(b)(2)(A)(ii), a debtor is entitled to
deduct the expense amounts specified under the National and Local

5

Standards, and, in some instances, a debtor may deduct actual expenses.  11 U.S.C. § 707(b)(2)(A)(ii).  Finally, a debtor is permitted to deduct average monthly payments for secured debts and priority claims.  11 U.S.C. § 707(b)(2)(A)(iii) -(iv).

If, after performing the calculations under the means test, the presumption of abuse arises, the Court has no discretion and must dismiss the chapter 7 case unless a debtor is able to rebut the presumption by demonstrating special circumstances pursuant to section 707(b)(2)(B) justifying additional expenses or adjustments of the debtor's current monthly income.  Under this section, a debtor may rebut the presumption of abuse "by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances . . . justify additional expenses or adjustments of [the debtor's] current monthly income for which there is no reasonable alternative."  11 U.S.C. § 707(b)(2)(B)(i).

If the presumption of abuse does not arise under the means test or if a debtor successfully rebuts the presumption, a debtor's chapter 7 case still may be dismissed if "the debtor filed the petition in bad faith . . . or . . . [if] the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse."  11 U.S.C. § 707(b)(3)(B) (emphasis added).  To determine whether a case should be dismissed under the

totality of the circumstances test, the Court must consider all of the circumstances of a debtor's financial situation, including the Debtor's ability to fund a chapter 13 plan.  <u>See, e.g.</u>, <u>In re Pennington</u>, 348 B.R. 647, 651 (Bankr. D. Del. 2006); <u>In re Paret</u>, 347 B.R. 12, 17 (Bankr. D. Del. 2006); <u>In re Henebury</u>, No. 06-13354, 2007 WL 853463, at *13 (Bankr. S.D. Fla. March 16, 2007); <u>In re Schoen</u>, No. 06-20864-7, 2007 WL 643295, at *3 (Bankr. D. Kan. March 2, 2007); <u>In re Hare</u>, 06-10924, 2007 WL 201249, at *4 (Bankr. E.D. Cal. Jan. 24, 2007); <u>In re Pak</u>, 343 B.R. 239, 244 (Bankr. N.D. Cal. 2006).

II.  <u>Does the Debtor's Non-dischargeable Student Loan Obligation Qualify as a Special Circumstance?</u>

For the Debtor to successfully demonstrate a special circumstance, she must fulfill both the procedural and substantive requirements of section 707(b)(2)(B).  To satisfy the procedural requirements, a debtor must "itemize each additional expense or adjustment of income and . . . provide . . . (I) documentation for such expense or adjustment to income; and (II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable." 11 U.S.C. § 707(b)(2)(B)(ii).  Additionally, a debtor must "attest under oath to the accuracy of any information provided to demonstrate that additional expenses or adjustments to income are required."   11 U.S.C. § 707(b)(2)(B)(iii).

In the instant case, there is no dispute that the Debtor has

7

fulfilled these requirements.  On December 20, 2006, the Debtor submitted her Declaration in Support of Rebutting the Presumption of Abuse Pursuant to Section 707(b)(2)(B)(i) [Docket No. 29], in which she attested under oath and described, in detail, the circumstances necessitating an additional expense and to which she attached the Promissory Note documenting the student loan obligation with Key Bank.

To satisfy the substantive requirement, a debtor must demonstrate "special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, . . . that justify additional expenses or adjustments of [the debtor's] current monthly income <u>for which there is no reasonable alternative</u>."  11 U.S.C. § 707(b)(2)(B)(i) (emphasis added).

Here, in support of her request, the Debtor argues that she has no reasonable alternative but to pay her son's student loan obligation because:  (1) she is a co-signor on the loan; (2) her son is unable to make the required monthly payments to Key Bank because of the several psychological disorders from which he suffers; and (3) the debt cannot be discharged because it does not impose an "undue hardship" for her or her dependents as required under section 523(a)(8).

As a threshold argument in opposition, the UST argues that the Debtor's student loan obligation does not fall within the narrow and defined categories of special circumstances described

8

in section 707(b)(2)(B) - "a serious medical condition or a call
or order to active duty in the Armed Forces."  Although the UST
concedes that the examples set forth in section 707(b)(2)(B) are
not exclusive, he argues that they are both of an involuntary
nature, thereby indicating Congress' intent to limit special
circumstances to those incurred or developed outside the control
of a debtor.  Accordingly, he urges this Court not to extend the
application of special circumstances to the current Case where
the Debtor voluntarily co-signed for her son's student loan
obligation.

To determine whether the Debtor's monthly student loan
obligation constitutes a special circumstance under section
707(b)(2)(B), the Court begins with the language of the statute
itself.  Duncan v. Walker, 533 U.S. 167, 172 (2001).  "[W]here
. . . the statute's language is plain, 'the sole function of the
courts is to enforce it according to its terms.'"  United States
v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989) (quoting
Caminetti v. United States, 242 U.S. 470, 485 (1917)); see also
Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992) ("[I]n
interpreting a statute a court should always turn first to one,
cardinal canon before all others.  We have stated time and again
that courts must presume that a legislature says in a statute
what it means and means in a statute what it says there.  When
the words of a statute are unambiguous, then, this first canon is

9

also the last: 'judicial inquiry is complete.'" (quoting Rubin v. United States, 449 U.S. 424, 430 (1981))).  "It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'"  TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001) (quoting Duncan, 533 U.S. at 174)).

If "'the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters'" or if the language of the statute is unclear, courts may resort to legislative history and "the intention of the drafters".  Ron Pair, 489 U.S. at 242-43 (quoting Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 571 (1982); see also United States v. E.I. DuPont de Nemours & Co. Inc., 432 F.3d 161, 169 (3d Cir. 2005) ("Where a statute's text is ambiguous, relevant legislative history, along with consideration of the statutory objectives, can be useful in illuminating its meaning." (citing Gen. Dynamics Land Sys., Inc. v. Cline, 540 U.S. 581, 600 (2004) (examining "the text, structure, purpose, and history" of the relevant statute))).

In applying these principles of statutory interpretation to the instant case, this Court concludes that section 707(b)(2)(B) does not require a debtor to demonstrate special circumstances of an involuntary nature.  First, the plain language of section

707(b)(2)(B) is clear - for a debtor to successfully obtain an additional expense or adjustment of CMI, she must demonstrate a special circumstance which leaves her with no reasonable alternative but to incur the expense or cause the income adjustment.  "Nothing in the statute suggests or mandates that the 'special circumstances' be outside of the control of the debtor.  Had Congress intended to place such a restriction on the nature of special circumstances it envisioned, Congress knows well how to construct appropriate language." In re Graham, No. 06-54764, 2007 WL 685945, at *4 (Bankr. S.D. Ohio March 7, 2007).  Moreover, Congress' use of the words "such as" to introduce the examples indicate its intent to provide a non-exhaustive list of illustrations rather than to constrict any application of the statute.  In re Sparks, III, No. 06-10012, 2006 WL 3953348, at *4 (Bankr. E.D. Tex. Oct. 18, 2006); In re Lenton, No. 06-10520, 2006 WL 3850011, at *7 n.22 (Bankr. E.D. Pa. Dec. 15, 2006).  Finally, it is even open to question whether the examples provided imply circumstances incurred or developed involuntarily.  See, e.g., In re Thompson, 350 B.R. 770, 777 (Bankr. N.D. Ohio 2006) ("The serious health condition could stem from a self-inflicted injury, and an individual called to active duty could have voluntarily enlisted as a reservist.").

Second, even if the language of section 707(b)(2)(B) were ambiguous, the legislative history of BAPCPA indicates that the

11

examples of special circumstances set forth in subsection (i) were meant to be _expansive_ - not limiting.  Originally, the language of section 707(b)(2)(B) did not include examples of allowed special circumstances.  Senator Jeff Sessions proposed the amendment to clarify "that the special circumstances exception . . . includes a debtor with a serious medical condition or a debtor on active duty in the military . . . ." H.R. Rep. No. 109-31(I), at 9 (2005), _as reprinted in_ 2005 U.S.C.C.A.N. 88, 96.  According to Senator Sessions, the intent behind the examples was not to limit judicial discretion or to provide a definition of special circumstances, but rather, was to ensure that "those incapable of paying back their debt due to military service or a serious medical condition may not be required to do so."  151 CONG. REC. S1834-01, S1845-46 (2005) (statement of Sen. Sessions).  Thus, due to the Congressional intent behind the examples set forth in section 707(b)(2)(B), the Court cannot conclude that special circumstances must be of an involuntary nature.  Contra _In re Delunas_, No. 06-43133, 2007 WL 737763, at *2 (Bankr. E.D. Mo. March 6, 2007) (noting that special circumstances "should 'rise to the same level as [the statutorily recognized examples of] a serious medical condition or a call to active duty.'  In general, 'special circumstances' are 'circumstances beyond a debtor's reasonable control, such as [the examples given in § 707(b)(2)(B)(i)].'" (quoting _In re_

12

Tranmer, 355 B.R. 234, 251 (Bankr. D. Mont. 2006))).

Finally, in addition to the plain language of the statute
and its legislative history, the Court's conclusion is buttressed
by existing case law permitting debtors to take additional
expenses or adjustments of CMI after demonstrating special
circumstances which were not incurred involuntarily.  Those
special circumstances include:  (1) mandatory 401(k) loan
repayment obligations, see Lenton, 2006 WL 3850011, at *7;
Thompson, 350 B.R. at 777-78; (2) unusually high transportation
costs, see In re Batzkiel, 349 B.R. 581, 586 (Bankr. N.D. Iowa
2006); and (3) failure to find suitable employment, despite
diligent search, along with the inability to relocate due to a
divorce settlement, see Graham, 2007 WL 685945, at *4.  See also
6 Collier on Bankruptcy ¶ 707.05[2][d] (Alan N. Resnick et al. eds.,
15th ed. rev. 2006) (providing examples of special circumstances,
such as "high commuting costs, the increased price of gas,
security costs in dangerous neighborhoods, or the cost of infant
formula and diapers" and noting:  "Indeed, any legitimate expense
that is out of the ordinary for an average family, or that may
have increased since the IRS guidelines were calculated, could be
considered.").

While the Court concludes that the Debtor need not
demonstrate special circumstances of an involuntary nature to
succeed under section 707(b)(2)(B), the plain language of the

statute, along with the applicable case law, require her to
demonstrate that her student loan obligation leaves her with no
reasonable alternative but to incur the monthly expense to Key
Bank.  Although the Court is afforded discretion under section
707(b)(2)(B) to effectuate a change in the Debtor's monthly
expenses under the means test, it is also mindful that it must
interpret the special circumstances exception so as to not
frustrate the purpose of BAPCPA:

> This exception is not available to justify
> the approval of expenses incurred merely at a
> debtor's discretion . . . .  Instead this
> exception to the parameters of acceptable
> expenses must be strictly construed to allow
> only those expenses which are truly
> unavoidable to the debtor.  It should be
> strictly construed so as to coerce the higher
> income debtor in a Chapter 13 proceeding to
> adjust his living expenditures to an
> acceptable level.  It should not be viewed as
> a panaceanic [sic] pathway by which a higher
> income debtor may achieve the justification
> of excessive spending patterns which created
> the necessity to seek Title 11 relief.  To
> interpret it otherwise would undermine some
> major objectives of the BAPCPA amendments in
> this area - to preclude the allowance of any
> improper discretionary spending by higher
> income debtors in Chapter 13 and to enhance
> distributions to unsecured creditors as a
> result.

Sparks, 2006 WL 3953348, at *4.

    In support, the Debtor relies upon In re Thompson, in which
a debtor successfully demonstrated that his monthly 401(k) loan
repayment was a special circumstance.  350 B.R. at 777-78; see
also Lenton, 2006 WL 3850011, at *7.  In Thompson, the Court

14

found significant that the "401(k) loan was not made in contemplation of bankruptcy, but in an effort to address . . . continued and worsening financial difficulties." Thompson, 350 B.R. at 777. Additionally, the Court found that the debtor had no reasonable alternative but to incur the monthly expense because it would be "financially irresponsible" and "financially impossible" to terminate the repayment obligation. Id. at 777-78. More specifically, the debtor would have had either to quit his job or repay the loan in full to rid himself of the obligation. Id. at 777.

Here, the record demonstrates that the Debtor's son incurred the student loan obligation in October 2003, almost three years prior to the commencement of this Case. Moreover, there is no dispute that the Debtor is a co-signor for her son's student loan obligation, that her son has been unable to make the required monthly payments to Key Bank, and that the obligation is non-dischargeable. Like the debtor in Thompson, the only way the Debtor can stop making the student loan payments would be to pay off the obligation in full, which the record indicates is impossible for this Debtor, or to have her son resume the monthly payments, which the record indicates would be unreasonable to expect at this time due to his medical condition.

The UST has argued that the Debtor does have a reasonable alternative - to convert the Case to one under chapter 13, modify

15

the rights of Key Bank pursuant to section 1322(b), and make a pro rata distribution to Key Bank for the length of a chapter 13 plan.  Essentially, the UST is asking this Court to consider in its special circumstances analysis how a debtor could proceed in a case under chapter 13 and what possible return unsecured creditors would receive.  The Court cannot apply this approach, however, as it would violate the Congressional intent behind the means test.  Rather, consideration of the potential results under a hypothetical chapter 13 plan belongs more properly under the section 707(b)(3) totality of the circumstances test.

An examination of recent case law reveals that only one court has considered, and rejected, the proposition that circumstances in a case under chapter 13 can be examined when determining the existence of special circumstances.  See In re Johns, 342 B.R. 626 (Bankr. E.D. Okla. 2006).  In Johns, the chapter 7 debtors sought to include additional expenses and adjustments of CMI in an effort to demonstrate special circumstances and rebut the presumption of abuse.  Id. at 628-29. The debtors argued that, unlike their chapter 7 case, in a case under chapter 13, their monthly child support payments would not be included as income and their 401(k) contributions and loan repayments would be deductible expenses.  Id.  Accordingly, the debtors argued that even if their case was converted to one under chapter 13, the distribution to general unsecured creditors would

16

be zero.  Id. at 628.  The court in Johns rejected the debtors

attempt to examine what would happen in a chapter 13 case, simply

noting that:

> This Court need not examine what possible
> return the Debtors' unsecured creditors would
> receive in a Chapter 13.  The Debtors filed
> for bankruptcy relief under Chapter 7 of the
> Bankruptcy Code, and this Court will examine
> their circumstances pursuant to §
> 707(b)(2)(B) to determine if the Debtors have
> overcome their burden in rebutting the
> presumption of abuse in the present case.

Id. at 629.

Despite the lack of case law addressing the issue presented

to the Court today, courts throughout the country have addressed

a related issue:  namely, whether a debtor may include in the

means test calculation payments on secured debts if the debtor

intends to surrender the collateral after filing the case.

Without ruling on this issue (which is not before the Court in

this Case), the Court notes that the overwhelming majority of the

cases have permitted such action in the context of ruling on a

motion to dismiss a chapter 7 case under section 707(b)(2).  See,

e.g., In re Longo, No. 06-30781, 2007 WL 836762, at **3-4 (Bankr.

D. Conn. March 19, 2007); In re Hartwick, No. 06-10749, 2007 WL

518617, at *4 (Bankr. D.N.H. Feb. 12, 2007); In re Sorrell, No.

06-31720, 2007 WL 211276, at **15-16 (Bankr. S.D. Ohio, Jan. 26,

2007); In re Randle, No. 06-B-05929, 2006 WL 3734351, at **2-6

(Bankr. N.D. Ill. Dec. 19, 2006); In re Simmons, 357 B.R. 480,

17

483-86 (Bankr. N.D. Ohio 2006); In re Walker, No. 05-15010, 2006
WL 1314125, at **2-8 (Bankr. N.D. Ga. May 1, 2006); see also In
re Singletary, 354 B.R. 455, 458 (Bankr. S.D. Tex. 2006) (holding
that, although the intent to surrender does not extinguish a
debtor's right to deduct secured payments under the means test,
the actual surrender of the collateral does do so); accord In re
Nockerts, 357 B.R. 497, 500-05 (Bankr. E.D. Wis. 2006).  But see
In re Harris, 353 B.R. 304, 309 (Bankr. E.D. Okla. 2006)
(considering the intent of the debtors because "[t]he means test
was intended to 'ensure that those who can afford to repay some
portion of their unsecured debts [be] required to do so.'"
(quoting In re Hardacre, 338 B.R. 718, 725 (Bankr. N.D. Tex.
2006)); accord In re Skaggs, 349 B.R. 594 (Bankr. E.D. Mo. 2006).

     In support of the conclusion that the intent to surrender
does not extinguish a debtor's right to deduct secured payments
under the means test, courts have relied upon the Congressional
intent animating the means test.  The means test was designed to
remove judicial discretion by providing "a mechanical estimate of
the debtor's abilities to fund a Chapter 13 plan . . . ."
Walker, 2006 WL 1314125, at *6.  To accomplish its goal,

          Congress chose to base the means test on
          historic income and expense figures . . ., as
          opposed to figures that may change with the
          passage of time or with a change in the
          debtor's lifestyle.  This choice indicates an
          intent to apply the means test to measure the
          debtor's need for Chapter 7 relief at the
          time of the filing, without regard to future

18

> events or relief that would be available
> under Chapter 7.

Id. at *5.  Because the means test is based upon historical
income and expenses, it was "not intended to . . . produce the
most accurate prediction of the debtor's actual ability to fund a
chapter 13 plan. . . ."  Id. at *6; accord In re Miller, No. 06-
81889, 2007 WL 128790, at *10 (Bankr. N.D. Ala. Jan. 18, 2007).
Rather, that forward-looking analysis belongs in section
707(b)(3)'s totality of the circumstances test, where future or
foreseeable circumstances may be considered.  See, e.g.,
Hartwick, 2007 WL 518617, at *4.

The court in Hartwick has accurately summarized the
interplay between sections 707(b)(2) and 707(b)(3):

> 'Congress' intent in adding the Means Test
> was to create a 'mechanical' formula for
> presuming abuse of Chapter 7.'  Randle, 2006
> WL 3734351, *3 . . . .  'Congress' intent to
> use a standardized or mechanical test and
> avoid reliance on individualized information
> as much as possible is demonstrated
> throughout § 707(b)(2).'  Id.  The major
> objective of Congress in adding the means
> test in § 707(b)(2) was to limit judicial
> discretion from the process of determining
> abuse by providing an objective standard for
> establishing a presumption of abuse.  In re
> Hartwick, 352 B.R. 867, 870 (Bankr. D. Minn.
> 2006).  However, Congress did not remove the
> ability of bankruptcy courts to consider
> circumstances, including postpetition
> developments, in determining abuse.  On the
> contrary, Congress expressly incorporated the
> formerly judicially created totality of the
> circumstances test which permits
> consideration of circumstances both preceding
> and following the filing of the petition.

19

. . .

As one court has observed:

'To allow a movant to include the outcome of
future events as part of the means test would
eliminate the distinction between the
presumption of abuse test and the totality of
the circumstances test.  The constraints of §
707(b)(2)(A) apply equally to the UST and the
Debtors.  If the Debtors want to present
facts that do not appear in the means test,
they must argue these facts as special
circumstances under § 707(b)(2)(B).
Similarly, if the UST wishes to have the
court consider facts external to the means
test, it must make a motion under § 707(b)(3)
based on the totality of the circumstances
and will not receive the benefit of the
presumption of abuse.'  In re Singletary, 354
B.R. 455, 465 (Bankr. S.D. Tex. 2006).

The application of the plain meaning of §
707(b)(2)(A)(iii) to the circumstances that
exist on the petition date in the application
of the means test is not demonstrably at odds
with Congress' apparent intent in enacting
BAPCPA because Congress expressly adopted the
totality of the circumstances test in §
707(b)(3) to permit a movant to raise, and
the bankruptcy court to consider, a debtor's
postpetition financial circumstances.

Id.; see also In re Wilson, 356 B.R. 114, 121 (Bankr. D. Del.

2006) ("In sum, this Court finds that Congress has developed a

two-step test to detect and deter abusive filers:  First, a

standardized formula (where the Court has no discretion), and a

second, case-by-case analysis designed to address what Congress

expected would be the inevitable exceptional cases.").

This analysis applies with equal force here.  Calculations

under the means test have been purposefully circumscribed by

Congress and should not include future or foreseeable circumstances, including what could or would happen to a debtor's income and expenses in a case under chapter 13.  If the means test included these circumstances, it would no longer act as a mere "mathematical estimate" using the income and expense figures provided for on Form B22A, but rather, would necessitate a review of a proposed chapter 13 plan.  It would also require the courts not only to determine whether a debtor intends to surrender collateral but also whether a debtor could and would choose either to avoid certain liens impairing entitled exemptions, see In re Oliver, No. 06-30076, 2006 WL 2086691, at *2 (Bankr. D. Or. June 29, 2006) (holding that debtors' intent to avoid a lien impairing exemptions may not be considered under the means test) or to modify the rights of a holder of a claim secured by real property, see 11 U.S.C. § 506(a).  This analysis is more properly conducted under section 707(b)(3).

Accordingly, the Court concludes that the Debtor has no reasonable alternative but to incur the monthly expense for her son's student loan obligation.  To the extent that the UST wishes the Court to consider what would happen to the student loan obligation in a case under chapter 13, the totality of the circumstances test under section 707(b)(3) must be applied.

## **CONCLUSION**

_____For the foregoing reasons, the Court concludes that the Debtor has rebutted the presumption of abuse by demonstrating a special circumstance that allows her to deduct her monthly student loan repayments.  If the UST wishes to proceed with its Motion to Dismiss, the Court will schedule a hearing to consider such evidence and argument as the parties may present on the issue of whether the Debtor's chapter 7 case should nonetheless be dismissed under section 707(b)(3).

An appropriate Order follows.

BY THE COURT:

Dated: Wilmington, Delaware
       April 20, 2007            Brendan Linehan Shannon
                                 United States Bankruptcy Judge

22